UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISON

| | | |
|---|---|---|
| Darrell L. Goss, | ) | Civil Action No. 6:18-3245-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Bryan P. Stirling, Charles Williams, | ) | |
| Thomas Robertson, A. Gladwell, | ) | |
| Stephanie Marshall, Officer Stanley | ) | |
| Terry, Lt. Clarissa Jones, Deborah | ) | |
| Richter, Jennifer Franklin, Sgt. Warren | ) | |
| Peek, Verdeia Hall, Charles Crosby, | ) | |
| Carlos Rivera, Juanita Moss, Willie | ) | |
| Smith, Chaplain Barber, and Canteen | ) | |
| Manager Yeldell, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Darrell L. Goss ("Plaintiff"), a state prisoner proceeding *pro se*, brought this civil action pursuant to 42 U.S.C § 1983, alleging violations of his constitutional rights. (ECF. No. 1.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Kevin F. McDonald for pretrial handling. The matter is now before this Court for review of the Report and Recommendation ("Report") issued by Magistrate Judge McDonald on June 22, 2020. (ECF No. 216.) In his Report, the Magistrate Judge recommends that this Court grant the motion for summary judgment filed by the South Carolina Department of Corrections ("SCDC") Defendants—Director Bryan P. Stirling, Warden Charles Williams, Associate Warden Thomas Robertson, Associate Warden Alyson Glidewell, Institutional Security Major Stephanie Marshall, Administrative Captain Stanley Terry, RHU Supervisor Lt. Clarissa Jones, Retired Chief Nurse Deborah Richter, Mailroom Director Jennifer

Franklin, Transport Officer Sgt. Warren Peek, Transport Officer Corporal Verdeia Hall, Food Service Manager Juanita Moss, Canteen Manager Georgia Yeldell, Chaplin Nedenia Parker-Barber, former Food Services Administrator for SCDC Willie Smith (ECF No. 166), and grant the motion for summary judgment filed by the Richland County Sheriff's Department ("RCSD") Deputies Charles Crosby and Carlos Rivera (ECF No. 176), as to Plaintiff's food service claim, First Amendment claims concerning mail and religion, and excessive force claim regarding use of restraints. (*See* ECF No. 216 at 20.) Moreover, as Plaintiff has consented to dismissal *with prejudice* of Defendants Williams, Robertson, Glidewell, Marshall, Terry, Jones, Richter, Hall, Yeldell, and Parker-Barber, Magistrate Judge McDonald recommends that the Court dismiss these Defendants and all claims pertaining to them *with prejudice* pursuant to Federal Rule of Civil Procedure 41(a)(2). (*Id.*) The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them here without recitation.[1]

## **BACKGROUND**

Magistrate Judge McDonald issued the Report on June 22, 2020. (ECF No. 216.) Plaintiff filed a motion to expedite consideration on July 1, 2020 (ECF No. 219) and objections to the Report on July 20, 2020 (ECF No. 227). Thereafter, Plaintiff filed two supplements to his objections. (ECF Nos. 229 & 231.) The SCDC Defendants filed a reply to Plaintiff's objections on August 3, 2020. (ECF No. 232.) The RCSD Defendants also filed a reply to Plaintiff's objections on August 13, 2020. (ECF No. 236.) The matter is ripe for consideration and the Court now issues the following ruling.

---

[1] As always, the Court says only what is necessary to address Plaintiff's objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; comprehensive recitation of law and fact exist there.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

### A. The Magistrate Judge's Findings and Recommendations

First, Magistrate Judge McDonald noted that Plaintiff's assertion that he was in protective custody while in the Restricted Housing Unit ("RHU") at SCDC's McCormick Correctional Institution ("McCormick"), and therefore should not have been subject to the RHU's more restrictive policies and procedures, is a central underlying theme to his § 1983 claims. (ECF No. 216 at 9.) However, the Magistrate Judge also observed that Plaintiff's assertion was unsubstantiated after an investigation into the matter was conducted in a concurrent case brought by Plaintiff in State court. (*Id.*) Accordingly, Magistrate Judge McDonald concluded that Plaintiff was not entitled to lesser restrictions than any other RHU inmate. (*Id.*)

Second, the Magistrate Judge correctly stated the law applicable to the exhaustion of administrative remedies under the Prison Litigation Reform Act, and explained Plaintiff's history of filing grievances along with the SCDC Defendants' assertion that Plaintiff was on "Grievance Restriction" status for filing excessive and duplicative grievances over consecutive months when he filed the instant case. (*Id.* at 9–11.) Magistrate Judge McDonald concluded that questions of material fact remain as to whether Plaintiff was properly restricted from filing grievances, so as to excuse his failure to exhaust his administrative remedies before filing suit here. (*Id.* at 12.)

Third, the Magistrate Judge addressed the substance of Plaintiff's constitutional claims. With respect to Plaintiff's First Amendment claims that McCormick's Postal Director violated his rights by preventing his receipt of mailed photos and a religious book, and that Director Stirling implemented and enforced a constitutionally impermissible policy regarding outside correspondence, Magistrate Judge McDonald found: (1) Plaintiff has failed to show that his mail order book is a necessary component to the practice of his religious beliefs, and Plaintiff had alternative means to exercise his religious rights because he had access to McCormick's chaplain; (2) even if Plaintiff had made the necessary showing of infringement upon his First Amendment rights, his claims would fail because Defendants have presented sufficient evidence that their refusal to allow Plaintiff to receive the photographs and religious book through the mail was reasonably related to the legitimate penological interest of inmate security. (*Id.* at 13–14.) Regarding Plaintiff's Eighth Amendment claims that the food served in the RHU was inadequate and cold, and that the restraints placed upon him when he was taken to the Richland County Courthouse constituted excessive force, the Magistrate Judge found: (1) Plaintiff has not

provided evidence that he suffered significant physical or emotional injury as a result of the food he was served and no genuine issue of material fact exists to support his food claims; (2) Plaintiff was not in protective custody status so he was subject to the RHU's policy of applying restraints when an RHU inmate is outside of the facility, Sgt. Peek was merely complying with SCDC policy by keeping the restraints on Plaintiff while he was transported between McCormick and the courthouse, the RCSD Deputies had no authority to remove restraints from SCDC inmates, and Plaintiff has failed to show otherwise. (*Id.* at 15–17.) Additionally, Magistrate Judge McDonald concluded that to the extent Plaintiff is attempting to sue Director Stirling, Food Service Administrator Smith, Food Service Director Moss, or Postal Director Franklin in their supervisory capacities within SCDC, Plaintiff's claims are subject to dismissal because the doctrines of vicarious liability and *respondeat superior* are generally not applicable to § 1983 claims, and Plaintiff has failed to satisfy any of the required elements to establish supervisory liability. (*Id.* at 18.)

Fourth, the Magistrate Judge concluded that the SCDC Defendants and RCSD Deputies are entitled to Eleventh Amendment immunity to the extent that Plaintiff has alleged claims for monetary relief against them in their official capacities. (*Id.* at 18–19.)

Fifth, Magistrate Judge McDonald found that the SCDC Defendants are entitled to qualified immunity because Plaintiff has not demonstrated that these Defendants violated his constitutional rights. (*Id.* at 19–20.)

**B. Plaintiff's Objections**

First, Plaintiff objects to the Magistrate Judge's finding that Plaintiff was not in protective custody status and therefore was not entitled to lesser restrictions than any

other RHU inmate. (*See* ECF No. 227 at 1–2.) Plaintiff argues that Magistrate Judge McDonald misapplied the standard for summary judgment when he acknowledged that Plaintiff presented "a Staff Memoranda indicating that his request for protective custody was being further investigated," but credited Defendants' version of events and viewed the evidence in Defendants' favor by finding that an investigation occurred and determined Plaintiff's request for protective custody should be denied. (*Id.* at 2–3.) Further, Plaintiff asserts that the Magistrate Judge erred by failing to consider Goss' declaration, which attests that he was in the RHU under protective custody status. (*Id.* at 3.)

Plaintiff has not demonstrated any error in Magistrate Judge McDonald' reasoning or conclusions. The evidence that Plaintiff submitted to support his assertion that he was in protective custody is a hand-written Staff Memoranda sheet reflecting that Goss' request for protective custody was forwarded for investigation. (ECF No. 190-1 at 2.) It goes without saying that an administrative note recording the mere occurrence that Goss' request was *forwarded* does not itself support the assertion that Goss was indeed under protective custody. Moreover, in Goss' declaration he asserts that he was being held in the RHU "because [he] had protective concerns that the Folk Nation (also known as 'The G's') had issued a hit to kill [him] because [he] stabbed two (2) G's in self-defense at Turbeville prison." (ECF No. 189-3 ¶ 3.) This assertion is conclusory and is not backed by any substantiating evidence. SCDC officials, not Goss, decided the reasons for holding Goss in the RHU. Likewise, SCDC officials made the decision whether or not to place Goss into protective custody based upon his request *and whether his circumstance was qualifying*. Protective custody status is not something that an inmate can unilaterally

choose. In his affidavit, Warden Williams states as follows:

> 7.    On arrival at MCI, Inmate Goss was demanding to be single celled. Because of his insistence that he was in danger, the matter was referred to and his concerns appeared before the Institutional Protective Concerns Committee (IPCC). Associate Warden Glidewell sits on that committee. Based on his allegations of a threat of harm, they found further investigation was warranted by the Security Threat Group (STG) coordinator through the Division of Police Services. While that referral and investigation were pending, Inmate Goss was house on the RHU unit by necessity due to his refusal to accept another placement. Once housed there, he must follow RHU guidelines and requirements. Inmate Goss refused to offer the Division of Police Services any information as to who he thought may be of a threat to him. The Division of Police Services could not confirm Inmate Goss's claims of threats on his life. Thereafter, the Statewide Protective Custody Board (SWPC) found his request for Protective Custody invalid. With that ruling, Goss was to return to General Population or Adjustment Unit. He refused either. All of Goss's complaints at McCormick Correctional Institution arise from his demand to be on RHU and his insistence that RHU policies not be applied, such as: restrictions on books, newspapers, mail, personal items, clothes, visitation, recreation, where he has his meals, how medical services are conducted. These are all limited by his insistence on RHU status. Protective Custody Inmates can be housed with an RHU unit in a designated area. They have less stringent security restrictions. Goss was never assigned to Protective Custody and no Protective Custody rules apply to Goss.
>
> . . . .
>
> 9.    In another lawsuit brought in state court in case <u>Darrell Goss, #305517 v. South Carolina Department of Corrections and Bryan P. Stirling (as Agency Director)</u>, C/A No.: 2018-CP-40-00731, the Court entered an Order in November of 2018 directing Inmate Goss to meet with the Division of Police Services to cooperate in providing all information indicating any threat to his person by any individual inmate of SCDC to address his continued lawsuits over requests for protective custody. Goss was interviewed under that Court order by the Division of Police Services on November 18, 2018. He provided names of ten individuals that he believed to be Folk Nation gang members and said he feared reprisals because he was involved in an attack on two Folk Nation gang members at Turbeville on January 16, 2018. An investigation was commenced. Police Services closed their investigation January 29, 2019 finding no threat of harm to Inmate Goss from anyone reported by Goss and that none of these individuals were assigned to MCI. His refusal to leave RHU continued.

(ECF No. 166-28 ¶¶ 7 & 9.) Suffice it to say, while Plaintiff disputes the fact that he was

not being held in protective custody status, that dispute is not "genuine" because the evidence offered is not such that a reasonable jury might return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). There are no inferences or ambiguities to be construed against the SCDC Defendants and in favor of Plaintiff; Plaintiff simply has not shown that he was in protective custody. Accordingly, the objection is overruled.

Next, Plaintiff raises various critiques directed toward the Magistrate Judge's conclusions that Plaintiff failed to show the mail order book in question is a necessary component to the practice of his religious beliefs, and that even if Plaintiff had made such a showing Defendants have presented adequate evidence to show that their refusal to allow Plaintiff to receive the photographs and the religious book was reasonably related to the legitimate penological interest of inmate security. (*See* ECF No. 227 at 4–7.) Plaintiff states the "grounds" for this objection are: (1) "First, . . . Goss submits a declaration to show that his mail order book is a necessary component to the practice of his religious beliefs, and he respectfully asks the Court to consider his late filing in the interest of justice." (2) "Second, Goss asserts that the Magistrate erred by misapplying the standard for summary judgment when he accepted the Defendants' version of facts as true, rather than Goss' version of facts." (3) "Third, Goss asserts that the Magistrate erred in finding that Defendants' refusal to allow him to receive his photographs and religious book through the mail was reasonably related to their legitimate penological interest of inmate security." (Here, Plaintiff rehashes his assertion that he was being held in the RHU under protective custody and was exempt from strict RHU policies.) (4) "Fourth, Goss asserts that the Magistrate erred in failing to address his alternative

argument. . . . that even if the RHU policy did apply to him, a complete ban on segregated inmates' ability to receive photos and religious books through the mail without any consideration to their segregated status (i.e., the purpose for their segregation) is not related to a legitimate penological goal because Defendants have failed the <u>Turner</u> test on this issue."; and (5) "Fifth, . . . Goss asserts that the Magistrate has erred in failing to address his argument concerning the disposal of his photos and religious book, which Goss contends amounts to a violation of free speech, and free exercise of religion as well." (*Id.* at 5–7.)

Mere disagreement with the Magistrate Judge's analysis and conclusions does not constitute valid reasoning to depart from the recommendations in the Report, and Plaintiff's objections regarding the photographs and religious book are nothing more than his subjective disagreement with Magistrate Judge McDonald' determinations respecting this claim. RHU inmates are prohibited from receiving mailed items, including photographs and books, pursuant to SCDC Inmate Correspondence Privileges Policy PS-10.08 § 6.1.10:

> Inmates in an Intake Status or RHU/SSR may not receive any publications or photos, to include newspapers and magazines, while they are housed in an Intake Status or RHU/SSR per SCDC Policy OP-22.38, "Restricted Housing Unit." Publications received for inmates housed in Intake Status or RHU/SSR will be automatically returned to sender at the inmate's expense. If funds are not immediately available, the correspondence will be sent to Contraband for disposal.

(ECF No. 38-3 at 10.) Warden Williams explained the reason for this policy is that RHU inmates have historically misused papers to jam locks, stop up toilets, and start fires; moreover, Plaintiff was found to have a stockpile of contraband papers under his bunk while in the RHU. (Williams Aff. ¶ 24, ECF No. 166-28; *see also* Ex. C, ECF No. 166-31.)

Postal Director Franklin stated that she merely followed the correspondence policy when she declined to deliver the photographs and book that had been mailed to Plaintiff. (Franklin Aff. ¶¶ 3–6, ECF No. 166-59.) Plaintiff has not shown that the Inmate Correspondence Privileges Policy did not apply to him, nor has he shown that the SCDC Defendants applied the policy in an unequal or unjust manner. Even taking Plaintiff's untimely affidavit into account, it does not show that the book mailed to him by Kenneth Copeland Ministries was necessary to the practice of his religious beliefs, and Plaintiff's conclusory assertion that he was "prevented from conducting [his] religious studies as required" (ECF No. 227-1 at 2) is without merit. Based on the substantiating evidence submitted by the SCDC Defendants, the Court agrees with the Magistrate Judge's conclusion that the refusal—pursuant to the correspondence policy—to allow RHU inmates, including Plaintiff, to receive photographs, books, and similar paper items was reasonably related to the legitimate penological interest of inmate security. Plaintiff has produced no evidence to show otherwise and has not convincingly argued that the Magistrate Judge's evaluation of the *Turner* factors was unsound. Accordingly, Plaintiff has not demonstrated any error in Magistrate Judge McDonald's reasoning and conclusions and has not shown that the correspondence policy violates the First Amendment. The objection is overruled.

Third, Plaintiff objects to the Magistrate Judge's finding that no genuine issue of material fact exists to support Plaintiff's food claims because the SCDC Defendants produced evidence that all meals were approved by a dietician and delivered/served with equipment appropriate for the RHU, and because there is no evidence that Plaintiff suffered significant physical or emotional injury as a result of the food he was served.

(*See* ECF No. 216 at 15–16.) Plaintiff states that the grounds for his objection are that the Magistrate Judge misapplied the summary judgment standard, focused solely on Defendants' evidence, and failed to consider Goss' evidence or view it in Goss' favor. (ECF No. 227 at 8–9.) The Court need not deliberate long in resolving this objection. Contrary to Plaintiff's contention (*see id.* at 9), Goss' declaration (ECF No. 189-3) does not show that he suffered significant physical and emotional injury as a result of the food he was served. Presumably, Plaintiff is relying on paragraph four of the declaration, in which Goss states: "While in RHU at McCormick, the food was always served cold and in inadequate portions which caused me chest pain, digestive pain, shortness of breath, constipation, hemorrhoid, stomach pain, hunger pain, headaches, listlessness, extreme weight loss, high-blood pressure, stress, depression, anxiety, anger and madness." (*Id.* at 2–3.) Though submitted in the form of a declaration, these assertions are nothing more than allegations and are unsupported by any corroborating evidence. On the other hand, the SCDC Defendants provided ample evidence to show that Goss suffered no significant injury. In his affidavit, Dr. John McRee, Statewide Medical Director of the South Carolina Department of Corrections, stated:

> 3. As a medical doctor who treated and examined Inmate Goss while at McCormick Correctional Institution and on physical examination on December 4, 2018, and who fully reviewed Inmate Goss's comprehensive inmate medical/mental health record to include outside test results and lab reports, I offer my medical opinion to a reasonable degree of medical certainty that my December 4, 2018 physical examination results, subsequently received blood panel results and his medical/mental health treatment file demonstrate that Inmate Goss suffers from no signs or symptoms of any serious medical condition related to restrictions on outdoor exercise and/or sunlight, nor does he demonstrate the signs of any serious mental health or physical health conditions or symptoms. This Affidavit supplements my December 2018 Affidavit prepared addressing his complaints on various motions filed with the court.

4. Further, it is my opinion to a reasonable degree of medical certainty that examination of Inmate Goss's medical records from 2015 to present reveal no evidence that this inmate has ever suffered any physical injuries incurred through accidental means, through any use of force, application of black box cuffs through a fight or disruption or through any of the condition of confinement complained of.

. . . .

8. I also base this affidavit upon my recollections and findings from my physical examinations of this inmate at McCormick Correctional Institution. These include my December 4, 2018, medical evaluation for report to the Court regarding the condition of Inmate Goss in case No.:2018-CP-40-03097. That evaluation included a comprehensive physical examination, an opportunity for Inmate Goss to address all his complaints regarding his medical/mental conditions and quality of care to me as his physician and as Statewide Medical Director of SCDC and the results of a series of comprehensive blood panels ordered at that time.

9. I would like to address in detail first the physical examination of Inmate Goss of December 4, 2018. . . . I was asked by counsel for SCDC to address the health issues in his Motion before the Court. Considering the issues, I felt an appropriate course of action would be to schedule a comprehensive physical of Inmate Goss and to address each of his concerns personally as Statewide Medical Director. The SCDC medical records of Inmate Goss document that I examined him on December 4, 2018. Examination was conducted at McCormick Correctional Institution on that date. Inmate Goss was being housed on the RHU at the time of the examination and was brought down to medical for examination. Inmate Goss was pleasant and responded to inquiries. Inmate Goss consented to a physical examination and the drawing of the recommended bloodwork. **Exhibit A, Exam Notes of December 4, 2018.**

10. Upon examination on December 4, 2018, all vitals were within normal range. Examination found him to be well developed with good muscle tone at 5'11" and at appropriate weight. Findings from examination of head, eyes, ears, nose and throat were all normal. His pupils reacted well and he had full range of ocular motion. His throat was clear and no nasal congestion was present. His teeth were examined and in good repair. His neck was supple with no lymphadenopathy noted. His lungs were clear. Examination of his heart revealed regular rhythm with bounding peripheral pulses. His abdomen was found to be soft with no unusual masses present. There were observed normal bowel sounds. Examination of the C-spine was straight with no muscle spasm appreciated. Muscle tone and strength tests of extremities were in the normal ranges. He reported some hip pain on leg raising but reported no back pain. No swollen joints were appreciated. He

reported his knees were tender to deep palpation, but no swelling was noted. He complained of knee and hip pain, which he blamed on lack of outdoor exercise. My examination revealed good range of motion and no swollen joints or back tenderness noted. These minor complaints of knee pain, low back pain and hip pain were subjective complaints of pain by Inmate Goss's self-report with no objective physical findings on examination. **Exhibit A, Exam Notes of December 4, 2018.**

. . . .

12. During that December 4, 2018 examination, I discussed with Inmate Goss doing a series of bloodwork as part of the physical and he agreed with my recommendation. Blood was drawn thereafter. Screening lab work was performed to further determine his medical condition. I ordered lab work consisting of CBC, Sed Rate, CMP and TSH. The CBC blood test is used to evaluate overall health and to detect a wide range of disorders including anemia, infection, and leukemia among others. The Sed Rate blood test helps to monitor the process of inflammation in the body. The CMP blood test helps to determine how the liver and kidneys are functioning. The TSH blood test examines the functioning of the thyroid. A review of his lab report of December 19, 2018 demonstrates no abnormalities and all test results were within normal range. There is no indication of any health problem or disease onset from either his examination or his blood panel results. See **Exhibit B, Blood Screening Results.** From the results, I can say to a reasonable degree of medical certainty that Inmate Goss's blood panel results demonstrate that Inmate Goss suffers from no signs and symptoms of any serious medical condition related to restrictions on outdoor exercise and/or sunlight, nor does he demonstrate the signs of any serious mental health conditions or symptoms, nor does he have the onset of any disease process. The results confirmed he is a healthy young man in his early 30's.

(ECF No. 166-1 at 2–7.) Plaintiff's subjective evaluation of his deteriorating health and opinion as to its cause does not create a genuine question of material fact regarding his medical and mental health condition. There is simply no evidence that the food at McCormick caused Plaintiff to suffer significant physical or emotional injury, and the objection is overruled.

Fourth, Plaintiff objects to Magistrate Judge McDonald's conclusions that the excessive force claim is meritless, and that Sgt. Peek and the RCSD Deputies are entitled to summary judgment. (*See* ECF No. 216 at 16–17.) Plaintiff contends the grounds for

this objection are that the Magistrate Judge: (1) misapplied the summary judgment standard; (2) ignored Goss' evidence that he was in the RHU under protective custody status; (3) erroneously and irrelevantly referenced the fact that Goss stabbed two inmates in analyzing the issue of whether Defendants used excessive force by leaving Goss in full restraints while in a holding cell; (4) incorrectly found that Sgt. Peek was merely complying with SCDC policy by keeping restraints on Goss while he was transported to and from the courthouse because the policy only requires an inmate to be in restraints "while enroute," not while in a cell; (5) incorrectly found that the RCSD Deputies had no authority to remove the restraints from Goss because Goss was in the custody of the RCSD Deputies once he arrived at the courthouse; (6) incorrectly found that Goss failed to show the officers acted intentionally or maliciously to cause him injury by leaving his restraints in place or that the restraints caused even de minimis physical or mental injury; and (7) erred in failing to address Goss' alternative argument that "it would be unreasonable if SCDC's policy does require <u>all inmates</u> . . . to be restrained in the blackbox handcuff[] <u>in addition</u>[] to full restraints when being transported outside of the prison because the Defendants . . . [have] failed to meet the four prongs in the <u>Turner</u> test on this specific issue." (ECF No. 227 at 11–13.) In his "Supplemental Objections" filing, Plaintiff argues the Magistrate Judge incorrectly found that Goss failed to show the officers acted intentionally or maliciously to cause him injury by leaving his restraints in place: "Goss has indeed 'made the assertion' that the officers acted maliciously and sadistically when they kepted [sic] him in restraints while in a holding cell, which is all that this claim requires." (ECF No. 229 at 3.) In his "2nd Supplemental Objections" filing, Plaintiff contends it was error for the Magistrate Judge to find, based on the SCDC Defendants' affidavits, that Sgt. Peek was

14

merely complying with SCDC policy by keeping restraints on Plaintiff, because the affidavit testimony constitutes Defendants' "interpretation of the policy." (ECF No. 231 at 2.) Instead, Plaintiff argues, "the Magistrate should have reviewed the policy before rendering his decision." (*Id.*)

Magistrate Judge McDonald found that the handcuffs and blackbox used during the transport in question were applied in accordance with SCDC policy and that the RCSD Deputies were not authorized to remove SCDC restraints from Plaintiff. (*See* ECF No. 216 at 4–5, 16–17.) Defendants provided ample evidence on which to base these conclusions. With respect to SCDC policy regarding restraints generally and the blackbox handcuff cover specifically, Warden Williams stated in his affidavit:

26. **SCDC Policy OP-22.38 titled "Restrictive Housing Unit"** is the rulebook for the unit Goss elected to be on at MCI. Relevant sections of that lengthy policy are attached as attached as **Exhibit D, 1-10.**

**a. SCDC Policy OP-22.38, Section 17 outlines Restraints and Security Precautions for SCDC inmates. The Policy provides all RHU inmates will be in full restraints when transported out of the institution.**

Inmate Goss states that he does not wish to wear the "black box" restraints when transported outside the Institution. The "Black Box" referred to is a cover that fits down over the handcuffs to cover the keyhole and to restrict any slack in the chains. The purpose is to prohibit the cuffs from being picked with a homemade key. This policy is not restricted and available for inmate Goss [sic] review in the law library. **See Exhibit D-2 and D-3.** Under [sic] policy, black box restraints and certain security precautions are utilized whenever inmates are removed and escorted from RHU. Pictures of the device used across the nation are attached as **Exhibits E and F.** Inmates in RHU are security risks to transporting officers, other inmates and members of the public. The additional safety devise [sic] reduces the risk of escape during transport. There is no punitive effect to the inmate. It is no more restrictive than the required handcuffs alone. In fact, its use provides a benefit to comfort of transport because handcuffs can be secured in front of the inmate, instead of the rear as is standard. This allows comfort in vehicle transport and allows the inmate to use his hands. Use of the black box merely makes it less likely that the lock securing

15

the cuffs can be tampered with. Goss never had any documented injury from use of the black box restraints and use of restraints by my officers was appropriate under the policy.

(ECF No. 166-28 at 12–13.) In his affidavit, Sgt. Peek explained his use of the blackbox restraints when transporting Goss as follows:

3. . . . . I understand from my review of the allegations, Inmate Goss has alleged that I acted with excessive force on October 3, 2018 by using Blackbox restraints, when I along with other officers transported Inmate Goss from McCormick Correctional Institution to his court appointment in Columbia, South Carolina and back again to McCormick.

4. At that time, Inmate Goss was a resident of the Restrictive Housing Unit (RHU) at McCormick and as such, SCDC policy OP-22.38, titled Restrictive Housing Unit section[] 17. Restraints and Security Precautions for RHU Inmates mandates that, "The proper restraints and security precautions will be utilized whenever RHU behavioral level inmates are removed from, escorted, or placed back into their cells. All RHU inmates will be in full restraints (which includes Blackbox) when transported out of the institution."

5. Once we arrived at the Courthouse, Inmate Goss was transferred to the custody of the Richland Officers to be placed in a holding cell. Inmate Goss was left in full restraints because policy required that he remain in full restraints while off the grounds of the Correctional Institution.

6. When inmates wear the Blackbox cover, they can be handcuffed with their hands in front of their body which is more comfortable. The Blackbox prevents the inmates from being able to pick the lock. Restraints are removed in the Courtroom at the discretion of the Presiding Judge. No force was used against Inmate Goss. The handcuffs are double locked so that they cannot tighten. The black box simply covers the lock mechanism. The device used is similar to that in the attached, **Exhibit A.**

(ECF No. 166-36 at 2–3.) As already discussed above, Plaintiff—despite his protestations—was not in protective custody while in the RHU. Accordingly, there is no evidence that Plaintiff was somehow exempt from the restraint policy that is otherwise applicable to RHU inmates. Moreover, contrary to Plaintiff's objection, Magistrate Judge McDonald properly analyzed the facts regarding which officers were responsible for his custody during relevant times at the courthouse *from the perspective advanced by*

*Plaintiff*: "Sgt. Peek attests that on October 3, 2018, he transported the plaintiff to and from the Richland County Courthouse in full restraints – including a Blackbox handcuff cover to prevent him from picking the lock – in compliance with the RHU policy and that *he relinquished custody to Richland County deputies while at the* courthouse." (ECF No. 216 at 5.) The RCSD Deputies attested that, due to the number of temporary prisoners they encounter at the courthouse, they do not recall encountering Plaintiff specifically, but that they were not authorized to remove SCDC restraints from Plaintiff in any event. (*See* Crosby Aff., ECF No. 176-2; Acevedo-Rivera Aff., ECF No. 176-3.) Plaintiff has not produced *any* evidence of injury associated with the use of the restraints in question. Neither has he shown that any other manner of excessive force was applied to him by Defendants. Plaintiff has not shown any error in the Magistrate Judge's reasoning or conclusions regarding the excessive force claim and the objection is overruled.

Fifth, Plaintiff objects to Magistrate Judge McDonald's finding that because Plaintiff has not demonstrated that Defendants violated his constitutional rights, the SCDC Defendants are entitled to qualified immunity. (*See* ECF No. 216 at 19–20.) Plaintiff argues: "Goss has indeed shown that the Defendants violated his constitutional rights; however, the Magistrate has inappropriately applied the standard for summary judgment by not accepting, as true, Goss' version of facts, and viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to him." (ECF No. 227 at 14.) Plaintiff does not support this argument with any substantive explanation as to how the Magistrate Judge supposedly erred. (*See id.*) The objection is conclusory and is a regurgitation of Plaintiff's prior assertions regarding Magistrate Judge McDonald's determinations as to each of Plaintiff's constitutional claims. Therefore, the objection is

overruled.

In summary, the Court agrees with the Magistrate Judge's comprehensive and well-reasoned Report. After *de novo* review, the Court finds that Magistrate Judge McDonald fairly and accurately summarized the facts, applied the correct principles of law, and committed no error. Thus, the Court overrules Plaintiff's objections *in toto*.

## CONCLUSION

For the reasons set forth above, the Report (ECF No. 216) of the Magistrate Judge is ADOPTED and incorporated herein. The Court OVERRULES Plaintiff's objections (ECF Nos. 227, 229, 231). Defendants' motions for summary judgment (ECF No. 166 & 176) are GRANTED as to Plaintiff's food service claim, First Amendment claims concerning mail and religion, and excessive force claim regarding use of restraints against SCDC Defendants Stirling, Moss, Smith, Franklin, and Peek, as well as RCSD Deputies Crosby and Rivera. Pursuant to Plaintiff's notice of voluntary dismissal (ECF No. 189 at 1–2) Defendants Charles Williams, Thomas Robertson, A. Glidewell, Stephanie Marshall, Stanley Terry, Clarissa Jones, Deborah Richter, Verdeia Hall, Georgia Yeldell, and Nedenia Parker-Barber, and all claims pertaining to them, are DISMISSED *with prejudice* under Federal Rule of Civil Procedure 41(a)(2). Plaintiff's motion to expedite consideration (ECF No. 219) is DENIED as moot. Accordingly, this case is DISMISSED in its entirety.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

December 2, 2020
Greenville, South Carolina